UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**EASTERN TOWERS, INC.,**                               Chapter 7
    Debtor.                                         Case No. 06-14092-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**JOSEPH G. BUTLER, CHAPTER 7 TRUSTEE,
JOHN STRACHAN, and
TIMBERLINE CONSTRUCTION CORPORATION,**

    Plaintiffs,
v.                                                      Adv. P. No. 07-1313

**EDWARD T. MOORE, et al.**

    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the Motion of Defendants, Edward T. Moore ("Moore"), Lawrence W. Rosenfeld ("Rosenfeld"), Eastern Towers, LLC, Eastern Properties, LLC, Horizon Towers, LLC, Tower Investors Trust, Glover Property Management, Inc., 5G Towers, LLC, and 5G Investment Trust, LLC (collectively, the "Defendants") to Dismiss Claims Asserted by John Strachan ("Strachan") and Timberline Construction Corporation ("Timberline") for Lack of Subject Matter Jurisdiction (the

1

"Motion"). In particular, the Defendants seek the dismissal of Counts 4 through 8 of the Plaintiffs' Second Amended Complaint as those counts have been asserted by Strachan, individually, as well as Counts 9 through 11 to the extent that Timberline seeks relief, on the ground that this Court lacks subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, or 1334(a), (b), and (e). The Plaintiffs, Joseph G. Butler, the Chapter 7 Trustee of the estate of Eastern Towers, Inc. (the "Debtor"), Strachan, and Timberline, oppose the Motion. For the reasons set forth below, the Court shall enter an order granting the Motion.

## II. BACKGROUND

For purposes of this decision, the Court incorporates by reference the facts set forth in the Plaintiffs' Second Amended Complaint. In their Second Amended Complaint, the Plaintiffs summarized litigation which was originally commenced prepetition by Strachan in the Suffolk Superior Court, Department of the Trial Court, as follows:

> The Strachan Litigation arises out of the wrongful actions of Moore and Rosenfeld, who, acting in concert with others, engaged in a series of transactions and course of conduct designed (i) to strip away meaningful assets and opportunities of the Debtor, a business venture to created [sic] construct and own telecommunications towers to be used by licensed wireless telecommunications carriers, and (ii) to freeze Strachan out of that business venture that he initially started and worked for over two years to build. Accordingly, Strachan . . . filed a verified complaint against, among others, Moore and Rosenfeld for their continuous and repeated breaches of fiduciary duties and wrongful conduct; against certain named corporate and trust entities, that, upon information and belief, were and are owned, controlled and used by those individual defendants in furtherance of their wrongful conduct, and/or received assets or opportunities that were wrongfully diverted away from the business that was started and built by Strachan.
>
> . . . Strachan also asserted claims derivatively on behalf of, and for the benefit of, the Debtor against Moore and Rosenfeld, as the directors of the Debtor,

2

> for continuously and repeatedly breaching their fiduciary duties and their duties of loyalty, for self-dealing, and for usurping corporate opportunities and transferring assets - - which should have been owned and held by the Debtor - - to other entities in which they have a controlling interest. . . .

The Plaintiffs, in their Second Amended Complaint, also summarized litigation originally commenced prepetition by Timberline in the Essex Superior Court, Department of the Trial Court, as follows:

> The Timberline Litigation involves an action to recover monies due and owing for labor, materials and equipment provided by Timberline. The Debtor engaged Timberline to construct certain telecommunications (or "cell") towers in Massachusetts and New Hampshire. Timberline completed the construction work and delivered the cell towers to the Debtor, at which point the Debtor failed to pay Timberline for its work.  Further, the controlling shareholders of the Debtor informed Timberline that Timberline would only receive payment of the previously-agreed to contract price for the cell towers if Timberline performed additional services for the Debtor and/or its related entities and controlling shareholders by completing additional construction work (gratis), and by locating tenants for the cell towers which Timberline had constructed and delivered.
>
> . . . Timberline incurred [damages] as a result of Debtor's breach of contract, and unfair, deceptive and inequitable actions.  In the Timberline Litigation, Timberline asserted counts against the Debtor, Eastern Towers, LLC, Eastern Properties, LLC, Moore and Rosenfeld, including breach of contract, quantum meruit, and violation of Chapter 93A of the Massachusetts General Laws . . . and that Moore and Rosenfeld, as the controlling shareholders of the Debtor, orchestrated a fraudulent transfer of the Debtor's assets to their related companies in order to bankrupt the Debtor, and deprive Timberline of the monies it was rightfully owed.

The Defendants answered the Second Amended Complaint, denying all material allegations.  Additionally, they made a demand for a jury trial on all issues so triable, and did not consent to the entry of final orders or judgment by this Court.  They also noted that they have not filed proofs of claim in the Debtor's Chapter 7 case.

The counts set forth in the Plaintiffs' Second Amended Complaint can be summarized as follows:

| COUNT | PLAINTIFF | DEFENDANT(S) | GROUNDS ALLEGED |
|---|---|---|---|
| One | Trustee | Moore and Rosenfeld | Derivative Claim of Breach of Fiduciary Duty |
| Two | Trustee | Moore, Rosenfeld, Eastern Towers, LLC, Eastern Properties, LLC, 5G Investment Trust, LLC, Horizon Towers, LLC, Tower Investors Trust, and Glover Property Management, Inc. | Action for an Accounting |
| Three | Trustee | Moore, Rosenfeld, Eastern Towers, LLC, Eastern Properties, LLC, 5G Investment Trust, LLC, Horizon Towers, LLC, Tower Investors Trust, and Glover Property Management, Inc. | Constructive Trust |
| Four | Strachan | Moore and Rosenfeld | Breach of Fiduciary Duty/Freeze Out |
| Five | Strachan | Moore and Rosenfeld | Promissory Estoppel |
| Six | Strachan | Moore and Rosenfeld | Breach of Contract |
| Seven | Strachan | Moore and Rosenfeld | Breach of the Covenant of Good Faith and Fair Dealing |
| Eight | Strachan | Moore and Rosenfeld | Wrongful Termination |
| Nine | Trustee and Timberline | All Defendants | Fraudulent Conveyance/Fraudulent Transfer |
| Ten | Trustee and Timberline | All Defendants | Avoidance and Recovery of Constructively Fraudulent Transfers |
| Eleven | Trustee and Timberline | Moore and Rosenfeld | Unfair and Deceptive Acts and Practices/M.G.L. c. 93A |

**III. POSITIONS OF THE PARTIES**

    A. <u>The Defendants</u>

    The Defendants argue that the claims of Strachan and Timberline neither "arise under" the Bankruptcy Code nor "arise in" the Debtor's case within the meaning of 28 U.S.C. § 1334(b). That section provides:

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). Citing *inter alia* <u>Wood v. Wood (In re Wood)</u>, 825 F.2d 90, 96 (5th Cir. 1987), the Defendants state that proceedings "arising under" title 11 are "those proceedings that involve a cause of action created or determined by a statutory provision of title 11." <u>Id.</u> at 96. Citing <u>Concerto Software, Inc. v. Vitaquest Intern., Inc.</u>, 290 B.R. 448 (D. Me. 2003), they state that proceedings "arising in " cases under title 11 "'are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.'" <u>Id.</u> at 452. Based upon those parameters, the Defendants maintain that "[n]one of the Strachan and Timberline Counts arises [sic] under the Bankruptcy Code or arise in the Debtor's Chapter 7 case within the meaning of Section 1334(b)" because they existed prepetition and were amended and consolidated by the Plaintiffs as part of the adversary proceeding.

    The Defendants also argue that bankruptcy courts generally lack subject matter jurisdiction to hear controversies between third parties that do not involve the estate or

5

estate property. They rely on the seminal case of Pacor, Inc. v. Higgins, 73 F.2d 984, 994 (3d Cir. 1984), *rev'd on other grounds by* Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995), and In re G.S.F. Corp., 938 F.2d 1467 (1st Cir. 1991), for the proposition that the Strachan and Timberline counts are not "related to" the Debtor's bankruptcy case because their outcome could have no conceivable effect on the Debtor's bankruptcy case.

With respect to Timberline's counts, the Defendants, citing, *inter alia*, Morley v. Ontos, Inc. (In re Ontos, Inc.), 478 F.3d 427, 431 (1st Cir. 2007), *cert. denied,* 552 U.S. 823 (2007), and Sears Petroleum & Transport Corp. v. Burgess Construction Servs., Inc., 417 F.Supp.2d 212 (D. Mass. 2006), add that creditors lack standing to seek avoidance of fraudulent transfers as those claims are assets of the bankruptcy estate.

Finally, the Defendants assert that this Court lacks supplemental jurisdiction under 28 U.S.C. § 1367 to exercise jurisdiction over the claims asserted by Strachan and Timberline, citing Vienneau v. Saxon Capital, Inc. (In re Vienneau), 410 B.R. 329, 334-35 (Bankr. D. Mass. 2009); *see also* In re Adamson, 334 B.R. 1, 12 (Bankr. D. Mass. 2005).[1]

---

[1] Section 1367 provides:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367.

B. <u>The Plaintiffs</u>

The Plaintiffs maintain that the Strachan and Timberline claims "are directly related to the administration of the bankruptcy estate of Eastern Towers, Inc. . . . and fall within the Court's jurisdiction for three distinct reasons." They stated the following:

> The Strachan Proof of Claim filed in the bankruptcy shows that Strachan seeks recovery from the Debtor for his lost salary due to his wrongful termination as President of the Debtor. The Timberline Proof of Claim shows that Timberline seeks recovery of nearly $1 million in proceeds for its work completed, attorneys' fees, interest and treble damages in the Chapter 7 proceeding. The Strachan and Timberline Counts at issue in the Motion [to Dismiss] seek, among other things, *the same* relief, with Strachan seeking the same lost salary from his termination under Counts 4-8 and Timberline seeking the same claim for work completed and related damages through Counts 9-11 that are at issue in the bankruptcy. As any recovery under the Strachan or Timberline Counts in this Adversary Proceeding would reduce or limit the largest liabilities facing the Debtor in its bankruptcy proceeding, these claims necessarily qualify for assertion of related to jurisdiction.

(emphasis in original).

The Plaintiffs also maintain that the alternative theories of recovery asserted by the Trustee, on the one hand, and Strachan and Timberline on the other, might directly impact what the Trustee may recover from the same Defendants, resulting in "related to" jurisdiction. Finally, they maintain that the procedural posture of the litigation serves as an alternative basis for denial of the Motion. Specifically, they request that they be allowed the opportunity to move to withdraw the reference, stating that "the Defendants are opportunistically seeking dismissal of claims that may otherwise be heard in District Court through an exercise of supplemental jurisdiction."

7

**IV. DISCUSSION**

The arguments of the parties establish that the only contested issue raised by the Motion is whether this Court has "related to" jurisdiction over the counts advanced by Strachan and Timberline. There is, and can be, no dispute that the counts at issue are non-core, with the exception of the Trustee's fraudulent conveyance counts (Counts Nine and Ten). On September 16, 2009, the Court granted the "Amended Motion of Defendants to Determine Core and Noncore Nature of the Counts Contained in the Second Amended Complaint," ruling that "all counts of the amended complaint are non core with the exceptions of the counts seeking to avoid fraudulent transfers, which are the subject of a jury demand." Thus, if this Court were to have jurisdiction, it would have, at most, "related to" jurisdiction because, as the court in Concerto Software, observed, "proceedings that 'arise in' and 'arise under' title 11 constitute the bankruptcy court's 'core' jurisdiction." 290 B.R. at 452 (citing 28 U.S.C. § 157(b), and In re Wood, 825 F.2d at 96-97).[2] Accordingly,

---

[2] The court in Vienneau, succinctly summarized the jurisdiction of the bankruptcy courts. It stated:

> Bankruptcy courts, like other lower federal courts, cannot create its own jurisdiction; they have only the jurisdiction permitted under the Constitution and given to them by Congress. Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). With the passage of 28 U.S.C. § 1334, Congress invested the district courts with original and exclusive jurisdiction for cases "under title 11," that is, the actual bankruptcy case commenced by the filing of a petition, and original but not exclusive jurisdiction for civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and (b). Congress also granted the district courts the power to refer bankruptcy cases as well as civil proceedings which arise in or under the Bankruptcy

the Court must determine whether the counts asserted by Strachan and Timberline "'potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.'" New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002)(quoting In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.1991), and Smith v. Commercial Banking Corp. (In re Smith), 866 F.2d 576, 580 (3d Cir.1989)).

The Plaintiffs argue that the successful adjudication of the Strachan and Timberline counts would necessarily reduce or eliminate the only substantial liabilities pending in the Debtor's bankruptcy case. The Court notes that Strachan, through his proof of claim, seeks recovery *from the Debtor* for his lost salary due to his wrongful termination as president of the Debtor and that Timberline, through its proof of claim, seeks recovery *from the Debtor* for work it completed on its behalf together with attorneys' fees, interest and treble damages. The Plaintiffs, in their Opposition to the Defendants' Motion to Dismiss, suggest that the relief Strachan and Moore seek against the Debtor is the same as the relief they

---

    Code and those related to bankruptcy cases to the bankruptcy courts. 28 U.S.C. § 157(a). In Massachusetts, the district court has referred the broadest possible universe of cases which a bankruptcy court could hear, namely all cases over which the district court may exercise jurisdiction under either § 1334(a) or (b). LR, D. Mass 201.

Id. at 334.

seek against Moore and Rosenfeld in the Second Amended Complaint, thus conferring jurisdiction on this Court because their potential recoveries against Moore and Rosenfeld would reduce the Debtor's obligations to Strachan and Timberline pursuant to their proofs of claim. The Court rejects this argument, particularly as the Plaintiffs do not allege that Moore and Rosenfeld were the alter egos of the Debtor.

In the first place, the Debtor's claims against Moore and Rosenfeld for breach of fiduciary duty are property of the bankruptcy estate, *see* 11 U.S.C. § 541(a), and can be brought only by the Chapter 7 Trustee. *See* In re Healthco Intern., Inc., 208 B.R. 288, 300 (Bankr. D. Mass. 1997) (a claim asserted by the debtor is an interest in property which passed to the bankruptcy estate, and the trustee can bring any suit the debtor could have brought, including suits against directors and controlling shareholders for breach of fiduciary duty). *See also* Morley v. Ontos, Inc. (In re Ontos, Inc.), 478 F.3d 427, 432 (1st Cir. 2007). Thus, for Strachan's claims against Moore and Rosenfeld to be viable, they must be independent, separate and distinct from the Trustee's claims against those defendants. In other words, Strachan's claims against Moore and Rosenfeld must be direct and not derivative claims of the corporation asserted by the Trustee against Moore and Rosenfeld. *See generally* Liston v. Gottsegen (In re Mi-Lor Corp.) 348 F.3d 294 (1st Cir. 2003). In that case, the United States Court of Appeals for the First Circuit explained:

> The Creditors Trustees may properly stand in the shoes of the corporation and its shareholders for purposes of the suit because they are continuing the corporation's cause of action, not initiating a separate action on behalf of creditors. *See* Collier on Bankruptcy ¶ 541.08 (15th ed. rev.) ("The trustee . . . stands in the shoes of the debtor corporation in prosecuting a cause of

> action belonging to the debtor . . . ."); id. ¶ 323.01 . . . . When a corporation sues its fiduciaries or a stockholder brings a derivative suit against corporate fiduciaries to enforce the corporation's rights, any recovery for the fiduciary breach belongs to the corporation. *See, e.g.*, Bessette v. Bessette, 385 Mass. 806, 434 N.E.2d 206, 208 (1982) ("It is a basic principle of corporate law that if a majority shareholder receives corporate cash distributions and a salary in excess of the reasonable value of services rendered, the right to recover the overpayments belongs to the corporation."). Sums recovered by a corporation in such suits are paid first to creditors, before any distributions are made to shareholders. *See* Bagdon v. Bridgestone/Firestone, Inc., 916 F.2d 379, 383 (7th Cir.1990) ("Recoveries [in derivative suits] pass through the corporate treasury, a process that both protects creditors (who get first dibs) and avoids questions of apportionment. . . ."). . . .

348 F.3d at 301 (footnotes omitted). The court added that "[i]n some circumstances, the *Donahue* doctrine permits stockholders of close corporations to sue for direct injuries and recover personal relief for breaches of fiduciary duties owed directly to them." Id. at n. 10 (citing Donahue v. Rodd Electrotype Co., 367 Mass. 578, 328 N.E.2d 505, 515 (1975), a case in which the Supreme Judicial Court permitted such a suit for personal relief in the case of a freeze-out of minority shareholders).

In Donahue, the court distinguished between the standard of duty owed by majority stockholders to minority stockholders to the "less stringent standard of fiduciary duty to which directors and stockholders of all corporations must adhere in the discharge of their corporate responsibilities." 367 Mass. at 593-94. It stated:

> Because of the fundamental resemblance of the close corporation to the partnership, the trust and confidence which are essential to this scale and manner of enterprise, and the inherent danger to minority interests in the close corporation, we hold that stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another. In our previous decisions, we have defined the standard of duty owed by partners to one another as the

11

> 'utmost good faith and loyalty.' <u>Cardullo v. Landau</u>, 329 Mass. 5, 8, 105 N.E.2d 843 (1952); <u>DeCotis v. D'Antona</u>, 350 Mass. 165, 168, 214 N.E.2d 21 (1966). Stockholders in close corporations must discharge their management and stockholder responsibilities in conformity with this strict good faith standard. They may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation.
>
> We contrast this strict good faith standard with the somewhat less stringent standard of fiduciary duty to which directors and stockholders of all corporations must adhere in the discharge of their corporate responsibilities. Corporate directors are held to a good faith and inherent fairness standard of conduct (<u>Winchell v. Plywood Corp.</u>, 324 Mass. 171, 177, 85 N.E.2d 313 (1949)) and are not 'permitted to serve two masters whose interests are antagonistic.' <u>Spiegel v. Beacon Participations, Inc.</u>, 297 Mass. 398, 411, 8 N.E.2d 859, 904 (1937). 'Their paramount duty is to the corporation, and their personal pecuniary interests are subordinate to that duty.' <u>Durfee v. Durfee & Canning, Inc.</u>, 323 Mass. 187, 196, 80 N.E.2d 522, 527 (1948).

367 Mass. at 592-94 (footnotes omitted). Thus, this Court finds that Strachan's claims as a minority shareholder of the Debtor against Moore and Rosenfeld, which are predicated upon a corporate freeze-out theory against them as majority shareholders, while nominally identical to those against the Debtor, are not, in fact, the same as those asserted by him in his proof of claim against the Debtor because they arise from separate legal theories, namely breach of fiduciary duty by stockholders in a closely held corporation and breach of contract. As such, any recovery he might have against Moore and Rosenfeld arising from his "partnership-like" relationship with them would not diminish his claim against the Debtor corporation which has been deemed allowed as the Trustee has not objected to his proof of claim. *See* 11 U.S.C. § 502(a).

With respect to Timberline's claims which duplicate those of the Trustee, the Court

concludes that those claims belong solely to the bankruptcy estate and cannot be asserted independently by the creditor. The fraudulent conveyance claims (Counts Nine and Ten) asserted by the Trustee and Timberline are the estate's causes of action, *see* Morley v. Ontos, Inc. (In re Ontos, Inc.), 478 F.3d 427, 431 (1st Cir. 2007); Sears Petroleum & Transport Corp. v. Burgess Construction Serv., Inc., 417 F.Supp.2d 212, 221 (D. Mass. 2006) ("It is well-established that creditors may not 'vie with the bankruptcy trustee for the right to pursue fraudulent conveyance actions. To the contrary, the commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors.'"). Accordingly, Timberline has no standing to assert those claims against Moore and Rosenfeld and the other defendants. *See* Klingman v. Levinson, 158 B.R. 109, 113 (N.D. Ill.1993); In re Bluestone, 102 B.R. 103, 105 (Bankr. N.D. Ohio1989)(creditor "has no standing to seek avoidance of an alleged fraudulent transfer under § 548.").

With respect to Timberline's claims set forth in Count 11 against Moore and Rosenfeld, the Court finds that those claims only superficially duplicate Timberline's proof of claim against the Debtor, which is deemed allowed. *See* 11 U.S.C. § 502(a). To the extent that Timberline has a cause of action against Moore and Rosenfeld for ch. 93A damages, as opposed to its breach of contract claim and ch. 93A claim against the Debtor as set forth in its proof of claim, this Court has no jurisdiction over that claim. More importantly, the Court finds that the Trustee has no claim upon which relief can be granted against Moore and Rosenfeld for ch. 93A damages. Through Count 11, the Plaintiffs failed to allege that the conduct of Moore and Rosenfeld, which Timberline asserts harmed it, harmed the

13

Debtor. Indeed, the Debtor was the instrument of the harm to the Timberline. Accordingly, the Chapter 7 Trustee, as plaintiff, has failed to state a cause of action *on behalf* of the Debtor for unfair and deceptive trade practices committed by Moore and Rosenfeld *against* the Debtor. Although Moore and Rosenfeld may have breached fiduciary duties to the Debtor or fraudulently conveyed property which the Trustee may recover for the benefit of all creditors of the Debtor's estate, the Plaintiffs have failed to set forth a viable cause of action against Moore and Rosenfeld for damages caused by the Debtor as a result of the conduct of Moore and Rosenfeld toward Timberline. Given that failure, Timberline's claims against Moore and Rosenfeld stand alone as an alternate claim that is not the same as its claim against the Debtor, and the Court has no jurisdiction to consider its ch. 93A claim against them.

In summary, the Court concludes that the reasons advanced by the Plaintiffs in support of "related to" jurisdiction are unpersuasive. Just because Strachan and Timberline are the only two unsecured creditors with significant claims against the estate does not confer jurisdiction under 28 U.S.C. § 1334(b) over their claims against third parties. Because the Trustee has not objected to the claims of Strachan and Timberline, their proofs of claim constitute prima facie evidence of their validity and amount. *See* Fed. R. Bankr. P. 3001(f). If the Trustee is successful with respect to his claims against the Defendants, his recoveries can satisfy those claims in part or in full. If Strachan and Timberline elect to pursue their claims against Moore and Rosenfeld in another forum and succeed against either or both of them, they may elect to withdraw their claims against the Debtor

14

corporation or the Trustee may elect to object to their claims, if he concludes that their claims against the estate have been substantially satisfied by those potential recoveries. Such a determination, however, is premature.

With respect to the Plaintiffs' additional arguments, in the absence of any evidence that Moore, Rosenfeld and the other Defendants have insufficient assets to pay potential judgments in favor of the Trustee, on the one hand, and Strachan and Timberline on the other, the possibility that the bankruptcy estate may be hampered in its collection efforts against Moore and Rosenfeld resulting from any success on the part of Strachan and Timberline in litigation against them is conjectural at best and insufficient to confer jurisdiction.  *See* In re Doctors Hospital of Hyde Park, Inc., 308 B.R. 311, 317 (Bankr. N.D. Ill. 2004).

Lastly, a decision by the Court to delay a ruling on the Defendants' Motion to Dismiss to permit the Plaintiffs to move to withdraw the reference ignores the threshold issue of the Court's jurisdiction, *see* Work/Family Directions, Inc. v. Children's Discovery Centers, Inc. (In re Santa Clara County Child Care Consortium), 223 B.R. 40, 44 (B.A.P. 1st Cir. 998); Rayonier Wood Products, L.L.C. v. Scanware, Inc. (In re Scanware, Inc.), 411 B.R. 889, 893 (Bankr. S.D. Ga. 2009), *aff'd,* __ F.Supp.2d __, 2009 WL 4281262 (S.D. Ga. Nov. 30, 2009), as well as the opportunity which has been available to the Plaintiffs to move to withdraw the reference before the inception of the present round of pleadings in view of the denial of the Defendants' Motion to Withdraw the Reference by the district court over a year and a half ago in June of 2008.  As stated by the court in Miller v. Kemira, Inc. (In re

15

Lemco Gypsum, Inc.), 910 F.2d 784, 789 (11th Cir. 1990), "[j]udicial economy itself does not justify federal jurisdiction."

The Court also rejects the Plaintiffs' assertion that bankruptcy courts may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in the absence of jurisdiction under 28 U.S.C. § 1334. The Court adopts the reasoning of the court in In re Vienneau, 410 B.R. at 334-35.[3] Because this Court lacks both "related-to" and supplemental jurisdiction, and because the parties have not consented to a jury trial in this Court, *see* 28 U.S.C. § 157(e),

---

[3] The court in Vienneau stated:

> By its very language that section [28 U.S.C. § 1367] applies only to district courts. This Court has previously rejected the idea that a non-article III court, such as the bankruptcy court, could exercise supplemental jurisdiction. In re Perez, 2008 WL 4164372, *4 (Bankr. D. Mass. 2008). *See also* In re Adamson, 334 B.R. 1, 12 (Bankr. D. Mass. 2005) (argument that bankruptcy courts have supplemental jurisdiction is a "dubious proposition"); In re Found. for New Era Philanthropy, 201 B.R. 382, 398 (Bankr. E.D. Pa. 1996) (deciding that bankruptcy courts do not have supplemental jurisdiction because § 1367 "makes no reference to the bankruptcy court"); In re Remington Development Group, Inc., 180 B.R. 365, 373 (Bankr. D. R.I. 1995) (" Section 1367's supplemental jurisdiction grant extends district court jurisdiction virtually to the limits of Article III. . . . It would be anomalous to conclude that the bankruptcy court, which obtains jurisdiction by circumscribed statutory reference from the district court, may exercise § 1367 supplemental jurisdiction at the outer limits of Article III. . . . To conclude otherwise is asking to run another Marathon.").

401 B.R. at 334-35.

the district court has exclusive authority to conduct further proceedings with respect to the remaining counts of the Plaintiffs' Second Amended Complaint.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Defendants' Motion to Dismiss and *sua sponte* dismissing Count 11 of the Second Amended Complaint.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: January 21, 2010
cc: Steven J. Torres, Esq., Doreen M. Zankowski, Esq., Michael T. Marcucci, Esq., Douglas E. Hausler, Esq., Joseph G. Butler, Esq.